TIMOTHY BURNET

v.

OLIVER DEAN and THE VILLAGE OF SOUTH ORANGE.

[Submitted May 19th, 1900. Decided June 9th, 1900.
Filed February 11th, 1901.]

1. Act of April 4th, 1872 (P. L. of 1872 p. 1203), empowers the board of trustees of the village of South Orange to raise money for internal expenses, but reserves to the township officers the duty of assessing and collecting the same. Act of March 30th, 1875 (P. L. of 1875 p. 395), provides that a village tax collector shall perform the duties theretofore incumbent upon the township collector. Act of March 14th, 1879 (P. L. of 1879 p. 340 § 1), provides that all taxes shall be a lien for two years after they become due. Section 18 of such act provides that it "shall not be construed to * * * repeal the provision of any charter of any city, village or borough whereby the collection of taxes is regulated, * * * and the lien

of taxes on lands in any such city shall remain as now regulated,   *   *   * this act being intended to apply to townships   *   *   * and not other municipalities." Act of March 10th, 1880 (*P. L. of 1880 p. 149*), provides that taxes shall be a lien, in cities and villages, as provided by their charters. Act of March 17th, 1882 (*P. L. of 1882 p. 130*), extends the lien provided for in the act of 1879 to three years.—*Held,* that section 18 of the act of 1879 did not have the effect to exclude the village of South Orange from its terms, and taxes are a lien on land therein for three years after they become due.

2. Act of February 22d, 1888 (*P. L. of 1888 p. 97*), providing that taxes levied on real estate in villages and municipal corporations governed by a board of trustees shall be a lien on the land until paid, does not apply to taxes levied before the act took effect.

3. Act of February 22d, 1888 (*P. L. of 1888 p. 97*), providing that in villages and other municipal corporations governed by a board of trustees, taxes shall be a lien on real estate until paid, is in violation of the Constitution, article 4, section 7, paragraph 11, as amended, providing that the legislature shall not pass private, local or special laws regulating the internal affairs of towns and counties.

*Mr. Chandler W. Riker* and *Mr. Joseph D. Gallagher,* for the complainant.

*Mr. James McC. Morrow* and *Mr. William H. Morrow,* for South Orange.

PITNEY, V. C.

This is a bill to foreclose a mortgage given by the defendant Dean to the complainant, dated April 10th, 1891, covering certain lands within the corporate limits of the village of South Orange.

The municipality of South Orange is made a party defendant because it claims a paramount lien upon the premises for certain taxes assessed by it for municipal purposes for the several years intervening between 1877 and the date of the mortgage, and also for certain taxes assessed upon the premises for the several years since the execution of the mortgage up to and including 1897. The prayer is that these taxes may be declared not to be a lien.

The only question litigated was whether the lien of such taxes was paramount to the mortgage.

In considering this question it must be borne in mind that the existence of a lien on land for taxes imposed upon the same, and the length of time such lien continues, is a matter depending entirely upon legislative enactment. It has no other foundation. For more than half of the present century there was no such lien, and when first imposed by statute it was held to be simply a lien upon the interest of the party against whom the tax was assessed, and was not paramount to encumbrances by mortgage or otherwise. The taxes levied by some few of the cities of the state were, by the terms of their charters, held to be paramount to encumbrances. But it was not until 1879, by the statute approved March 14th of that year (*P. L. of 1879 p. 340*), that taxes throughout the state were made paramount to encumbrances, and a rational method adopted for enforcing the lien.

The question presented, then, is entirely one of statutory construction.

The territorial limits of the village of South Orange, as at present constituted, formed originally a part of the township of South Orange, and the inhabitants of that portion were incorporated into a body politic and corporate by the act of March 25th, 1869. *P. L. of 1869 p. 645.* The incorporation was partial only, and in that respect resembled the original incorporation of Morristown and other towns and villages in this state. The roads within the limits of the village were, by that act, put under the control of the village trustees, who were given little, if anything, more than the powers of overseers of the highway. The township committee of the township were directed to give a certain proportion of the road money collected in the whole township to the trustees of the village.

This charter was amended by the act of April 4th, 1872. *P. L. of 1872 p. 1203.* That act, by the fifteenth section, gave the board of trustees power, by ordinance, to order to be raised in each year, upon the persons and property in said village, such sum or sums of money as the said board may deem expedient or necessary for the following purposes: lighting streets, grading, graveling or otherwise improving streets and highways, and cleaning and keeping the same in repair; support of a police

department; payment of any indebtedness of the village, and contingent expenses of the village.

This act did not supersede the right of the township to assess and collect taxes within the limits of the village for general township, county and state purposes. That machinery was left in full force and vigor.

By section 28 it was provided that the village clerk should transmit to the assessor of the township a copy of the ordinances that might be passed for the purpose of raising money by tax, and

"it shall be the duty of the assessor of the township to assess the said sum or sums upon the persons and property within the limits of the village, and the duty of the collector of the township to collect the same, in the same manner and at the same time that the taxes in the townships of said county are assessed and collected; provided, that no township tax for the working, repairing, paving or permanent improvement of roads shall be assessed and collected within the limits of the village,"

and no such tax in the other part of the township shall be expended within the village. And, by the twenty-ninth section, the collector of the township, after collecting such taxes, shall turn them over to the treasurer of the village.

A supplement to this charter was passed in 1875. *P. L. of 1875 p. 395.* That act provided for the appointment of a collector of taxes for the village, and for the payment of taxes directly to such collector; and section 10 provided that the duties now prescribed by the previous sections of the act to be done by the collector of the township shall be performed by the village collector.

The act of March 14th, 1879 (*P. L. of 1879 p. 340*), first made taxes generally throughout the state a paramount lien over and above mortgages. It declares (section 1) that

"all taxes which shall be laid, assessed or imposed for or on account of any lands, shall be, become and remain, from and after the date of such levy and assessment, a full and complete first and paramount lien on all the lands, tenements, hereditaments or real estate, on account of which such levy and assessment shall be made, for the space of two years from the time when such taxes so assessed were payable;"

and subsequent language makes it paramount to mortgages.

Burnet *v.* Dean.

In the second and subsequent sections provision is made for the collection of such taxes by advertisement and sale; and by the thirteenth section it is declared

"that it shall be the duty of the township collector, before the 1st day of February in each year, to make return in writing to the clerk of the county in which his township is situate, of all unpaid taxes assessed the previous year,"

and the clerk shall make a list of them.

By the fifteenth section:

"That in case such tax return shall not have been made at the time herein provided, or in case a name or names shall have been omitted from such return, then, and in that case, such tax shall cease to be a lien upon such real estate as against a purchaser or mortgagee in good faith."

The eighteenth section provides as follows:

"This act shall not be construed so as to alter, modify, affect, annul or repeal the provision of any charter of any city, *village or borough whereby the collection of taxes is regulated,* and the taxes assessed and to be assessed in any such city, village or borough, shall be levied, assessed and collected as heretofore, and the lien of taxes on lands in any *such city* shall be and remain as now regulated, and nothing in this act shall be held to impair, alter or affect the said lien in any way whatsoever, this act being intended to apply to townships in this state and not other municipalities."

This eighteenth section was amended by an act of May 6th, 1889 (*P. L. of 1889 p. 357*), but such amendment did not affect its construction for present purposes.

Much discussion was had as to the true construction of this act.

I think it was intended to make all lands subject to a tax for two years, and no longer; but the period of two years might be cut down by a failure to comply with the terms of the thirteenth and fifteenth sections in cases of townships and township collectors. The effect of the eighteenth section was simply to prevent the machinery previously in that act provided for being held applicable to any city, village or borough which already was provided with a particular machinery of its own; and that the

provision for the lien extending two years, and no more, did not apply to any city. The reason of this was that it was well known at the time that many cities in the state had charters which provided for an indefinite lien for taxes, and the fear was that this limitation of two years in the act in question might be construed to limit the lien of taxes in those cities. This explains the force of the last line—"This act being intended to apply to townships in this state and not to other municipalities."

It seems to me that that clause did not prevent the application to villages of the general declaration that all taxes should be a lien for the space of two years. The effect of that was to make the taxes levied by the village of South Orange for its municipal purposes a lien for two years. And it is unnecessary for present purposes to determine whether or not the thirteenth, fourteenth and fifteenth sections of that act apply to the village of South Orange and leave the collector of that village without any means of enforcing the collection of its taxes.

By the act of March 10th, 1880 (*P. L. of 1880 p. 149*), it is provided:

"That all taxes which may hereafter be laid, assessed or imposed, pursuant to the laws of this state, within any incorporate city, *village*, borough or other municipality of this state * * * shall be, become and remain from and after the date of such levy and assessment, a full and complete, first and paramount lien on all the lands, tenements, hereditaments or real estate * * * for and during the period now provided for in the act of incorporation or any supplement thereto or revision of the same, of any such city, village, borough or other municipality as aforesaid."

The effect of this act, which, by its terms, applied to villages, was to set at rest any doubts which might exist as to the paramount character of the lien for taxes over and above mortgages and other encumbrances.

On March 17th, 1882, another act was passed (*P. L. of 1882 p. 130*), which, in effect, extended the lien for nearly one year, namely, three years from and after the date of the assessment. (See *Hohenstatt* v. *City of Bridgeton, 33 Vr. 169,* where the construction of this language is discussed.)

I hold, then, that the taxes assessed for municipal purposes by South Orange were a lien for three years from and after the

time they were levied, and paramount to complainant's mortgage, and that the liens of those taxes have in fact expired except those brought within that limit, unless other legislation has changed the situation.

The defendant contends that by an act of February 22d, 1888 (*P. L. of 1888 p. 97*), such change has been effected. That is an act in three sections, the title of which is "An act concerning taxes and assessments in villages and other municipal corporations *governed by a board of trustees,* and making same a first lien on real estate, and authorizing sale for the payment of the same." The first section provides that taxes

"assessed by any *board of trustees* of any village or other municipal corporation against any person or persons, for and on account, &c., situate in the village or municipality *so governed*, together with lawful interest thereon, and all costs, fees, charges and expenses in relation thereto, shall be, become and remain a first and paramount lien upon the lands or real estate * * * *until paid.*"

The second section provides for the sale of the land, giving the board of trustees power to issue a warrant for their sale.

This act, if valid, and not contrary to the fundamental law, establishes the permanent lien for all taxes assessed after it took effect, which was on February 22d, 1888.

The defendant contends that it applies to previous taxes. I cannot adopt that view. It says "such taxes and assessments as may be lawfully levied, imposed or assessed by any board of trustees," &c. It is clearly prospective in its scope.

The defendant further refers to the first section of the act of March 25th, 1895 (*P. L. of 1895 p. 671*), which is a supplement to the act of February 22d, 1888, just referred to, and provides that section 2 of that act is amended to read as follows:

"And be it enacted, that in case any taxes or assessments referred to in the last section, whether heretofore levied, imposed or assessed, together with interest thereon * * * shall remain or shall have remained," &c.

That section evidently refers to the first section of the act of 1888, and that, as we have seen, is clearly prospective in its effect.

. The complainant attacks this legislation on the ground of its unconstitutionality. It is argued that it is contrary to that clause of the constitution which provides that

"the legislature shall not pass private, local or special laws in any of the following enumerated cases, that is to say, * * * regulating the internal affairs of towns and counties."

And it has been held that a classification such as that here attempted, to wit, villages or towns governed by a *board of trustees,* is not sufficiently general to prevent its being in effect a local and special law.

The cases relied upon are *Ross* v. *Winsor, 19 Vr. 95; Dobbins* v. *Long Branch Commissioners, 30 Vr. 146.*

In *Ross* v. *Winsor,* the act was entitled "An act providing for additional powers and certain changes in the government of certain localities *governed by commissioners;*" and the first section of the act was "That in all seaside resorts in this state *governed by a board of commissioners.*"

In *Dobbins* v. *Long Branch Commissioners,* the title was "An act authorizing municipalities *governed by commissioners* to pave and improve streets and avenues, and provide for the payment thereof." And the first section of the act provided that "whenever the governing body of any municipality, by whatever name the same may be known, and however created, *governed by commissioners,*" &c.

In both these cases the supreme court held that the classification depending upon the name of the body by which the city was governed was inadmissible, and rendered the acts special instead of general, and hence unconstitutional.

The language used in the enactments condemned by the two cases just cited is quite similar to that here under consideration, and those must control the present case, unless it can be properly held that the fixing of the time for which a lien for taxes in a particular municipality shall continue is not an act "regulating the internal affairs of towns and counties." It has been held that the word "towns" used in the constitution includes all municipalities from townships up. *Van Riper* v. *Parsons, 11 Vr. 1; Pell* v. *City of Newark, 11 Vr. 550.*

I am of the opinion that the fixing of the time for which a lien for taxes shall continue is a regulation of the internal affairs of the town. Such seems to have been the assumed basis of the discussion in the case of *Hermann* v. *Town of Guttenberg, 34 Vr. 616.* Suppose the legislature should pass an act declaring that there should be no lien for taxes within the territorial limits of the village of South Orange, naming it as such, could it be doubted for a moment that such an act would be within the constitutional inhibition in question? I think it could not.

I must therefore hold that the complainant is right in his contention that the claim of the village of South Orange for taxes is invalid, except such as shall be found, upon inquiry, to be within the rule laid down in the case of *Hohenstatt* v. *City of Bridgeton.* The amount of these may be ascertained by a reference, if the parties cannot agree upon them.